State ex. rel. SOUTH DAKOTA CHILDREN'S HOME SOCIETY, Respondent, v. KELLEY, County Judge, et al., Appellants.

(143 N. W. 953.)

1. **Prohibition—Issuance of Writ—Exercise of Jurisdiction—Practice—Pre-judgment of Case—Custody of Child.**

   The failure of a relator, in a proceeding in prohibition to restrain county court from proceeding with a cause therein involving right to custody of a child, to apply for relief in the county court instead of in the circuit court, or to object to the county court's jurisdiction, will not preclude issuance of the writ by the circuit court, where the county judge had already asserted jurisdiction in a similar proceeding then pending in said county court, and had prejudged the case by making findings, prior to issue joined in the county court proceeding, as part of a return to an alternative writ, and it further appearing that he had been counsel for one of the parties in a related proceeding also involving right to such custody, and that any application for relief in his court would have been unavailing in view of said findings so made.

2. **Infants—Guardianship—Commitment to Children's Home—Nature of Proceeding.**

   A proceeding by which a child is committed to the State Children's Home is one substantially in the nature of a guardianship proceeding.

3. **Guardian and Ward—Guardianship Proceeding—Power of Court to Modify Order—Exclusive Power.**

   Under Civ. Code, Secs. 148, 159, respectively, declaring in effect that in all cases the court making the appointment of

a guardian has executive jurisdiction over him, and that the power of a guardian appointed by the court may be terminated only by order of the court, and under the inherent power of the court generally, a guardian appointed by the circuit court cannot be removed by the county court.

4.   Appeal—Error—Review—Right Judgment on Insufficient Grounds —Reversal.

The appellate court will not disturb or reverse the rightful judgment of trial court, though such judgment may have been based upon insufficient grounds.

5.   Adoption—Effect—Rights of Natural Parent—Guardianship.

The natural parent of a child which has been adopted by another, has no parental rights over the child, and cannot institute proceedings in county court under Pol. Code, Secs. 3205-3214, for protection or relief of the child from an improper guardian.

6.   Guardian and Ward—Termination of Guardianship—Grounds of Application—Jurisdiction of Court.

Where a child has an adopted parent who has full right to its custody and control, an application or mandamus to compel a third party in actual custody of the child to give up such custody, which alleges merely that applicant was not the legal parent, and that the adopted parent was a proper person to have the care of the child, fails to state facts sufficient to confer jurisdiction upon the county court to entertain such proceeding.

7.   Constitutional Law—Determination of Constitutionality—Mode of Raising Question—Appeal From County to Circuit Court.

Where it was sought to attack the constitutionality of Pol. Code, Sec. 3205, conferring jurisdiction on circuit court over proceedings to provide homes for dependent children, as an infringement of constitutional jurisdiction of county court, held, the question of constitutionality of that statute cannot be raised by an attempted appeal from circuit to county court.

(Opinion filed Nov. 18, 1913.   Rehearing denied Jan. 12, 1914.)

Appeal from Circuit Court, Beadle County. Hon. ALVA E. TAYLOR, Judge.

Prohibition by the State, on the relation of the South Dakota Children's Home Society, against C. A. Kelly, as Judge of the County Court of Beadle County, and A. J. Larson, as sheriff, to enjoin continuance of certain proceedings in said County Court. From a judgment issuing a peremptory writ, respondents appeal. Affirmed.

*William Issenhuth, and A. W. Wilmarth,* for Appellants.

To authorize the issuing of prohibition from a superior court, it should be clearly made to appear that the inferior court is about to proceed in some matter over which it possesses no jurisdiction. 19 Am. & Eng. Enc. of Law, (1st Ed.) 270-1; 16 Enc. Pl. & Prac., 1133; County Court v. Boreman, (W. Va.) 11 S. E. 747.

The county court has original jurisdiction in matters of guardianship (Sec. 20, article V., of Constitution), and is certainly one, if not the only court, to which Kate McGaugh could make her appeal. A more opportune time for Kate McGaugh to ask for a consideration of her rights did not exist, than at this particular time. She is entitled to a hearing and a day in some court, and the only court open to her is the county court. (Sec. 25, Sub. 11, Probate Code; Sec. 146, Civil Code; Sec. 2650, Comp. Laws; McFall v. Simmons, 81 N. W. 900, 12 S. D. 562.

The amendment of the laws by adding sections 3206-3208, did not deprive county court of jurisdiction to entertain, hear or determine the claims of a parent or that of any other person to a child, after such child has been ordered surrendered to said society. Such a construction would render the law unconstitutional. In re Kol, (N. D.) 88 N. W. 277; Milwaukee Industrial School v. Milwaukee Co. Sup'sr., 40 Wis. 328, 22 Am. Rep. 702.

County courts have original jurisdiction in all matters of probate, guardianship, etc. Const. Art. 5, Sec. 20.

The Legislature cannot confer upon another court these functions and powers, expressly delegated by the Constitution to the county courts. In re Creighton, 11 N. W. 313.

Kate McGaugh is the mother of Celeste Issenhuth, and although this child is illegitimate, this mother is entitled to her custody and control. Wright v. Wright, 2 Mass. 109; Somerset v. Dightton, 12 Mass. 883; Peleshan v. Diana, 12 Mass. 429; Vol 15 Am. A. E. E. of L. 24; People v. Turner, 55 Ill. 280.

While the South Dakota Childrens' Home Society may not be a guardian within the full meaning of the term, it has certain guardianship control. Milwaukee Industrial School v. Supervisors Milwaukee County, 40 Wis. 329.

Where a constitution provides original jurisdiction over matters, it means exclusive original jurisdiction. Zander v. Coe,

5 Cal. 230; In re Estate of Stilwell, 139 N. Y. 341; In re-Creighton, 11 N. W. 313; Green v. Creighton, 48 Am. Dec. 746; Reed v. Omnibus R. R. Co., 33 Cal. 212.

Where a right is given by statute, and specific remedy is provided, designating the tribunal for an enforcement thereof, the jurisdiction of such tribunal is exclusive, unless the law otherwise provides. Armstrong v. Mayer, (Neb.) 83 N. W. 401.

The circuit court erred, in issuing the alternative writ, and on the hearing of said return the court further erred in issuing a peremptory writ.

In Reply.

The Constitution of the state of South Dakota, article 5, section 20, provides "county courts shall be courts of record, and shall have original jurisdiction of all matters of probate, guardianship, and settlement of estates of deceased persons."

If therefore this petition of Kate McGough relates to or pertains to a guardianship matter, the county court has original jurisdiction thereof.

Guardianship is defined by Bouvier, in his law dictionary, as follows: "The power of protective authority given by law, and imposed on an individual who is free and in the enjoyment of his rights, over one whose weakness on account of his age, renders him unable to protect himself."

The fact that John Issenhuth has adopted said child, does not pertain to the jurisdiction of the county court.

If this is a guardianship proceeding, the county court has the power to act, but the claim that the petitioner is not entitled to the custody of the child because the courts of Ohio have taken said child from her, or that John Issenhuth has adopted the child, or that the circuit court has given the custody of said child to the South Dakota Childrens' Home Society, or that John Issenhuth might appeal from the decision of the circuit court, or that the proceedings in the county court would be for the correction of an error of the circuit court, are defenses denying the right of Kate McGough to receive and control the custody of said child.

The only material questions are, is Kate McGough the mother of Celeste Issenhuth. Was Celeste Issenhuth taken from her

mother by a court because that mother at the time was not a proper person to have the custody of her? Has the condition which made that mother an improper person to have the custody of her child changed, so that she is now entitled to the custody of her child as against the South Dakota Childrens' Home Society? If these facts are shown by the petition, the county court has jurisdiction of this case, if the case of McFall v. Simmons is followed.

*Crawford & Warren*, for Respondent.

Neither the "petition for return of child" nor "order to show cause" granted by the judge of the county court shows a proceeding over which a county court of this state has jurisdiction. It is not a proceeding either for the appointment or the discharge of a guardian.

These allegations of the petition not only fail to show the existence of the jurisdictional facts necessary to a guardianship proceeding, but they show affirmatively that the petitioner is not entitled to the custody of the child. The legal adoption of a child terminates the right of custody of its natural parent and this right is transferred to its adoptive parent. If she seeks to set aside the adoption of the child by John Issenhuth, or to question the order of the circuit court of Beadle county surrendering this child to respondent, she should apply to the court through which adoption was made. 1 Cyc. 928, 930 and 935; Matter of Trimm, 63 N. Y. Suppl. 952; Cofer v. Scroggins, 98 Ala. 342, 39 A. S. R. 54; Matter of Clements, 78 Mo. 352.

It appears from said petition that there has been a legal adoption of said child in South Dakota by the said John Issenhuth.

The petition wholly fails to present to the appellant, C. A. Kelley, as judge of the county court of Beadle county, any jurisdictional facts upon which his said court can act.

There is no authority or jurisdiction vested in a county court of this state to transfer the custody of a minor child from one person to another, independent of the appointment of a guardian.

If this is a guardianship proceeding, and the county court is considering the question of the discharge of the Children's Home as the legal guardian of said child, then it is clear that in

no event would the custody of said child belong to Kate McGaugh, but the right of custody on discharge of guardian would be in John Issenhuth by right of his legal adoption.

The granting of this petition by the county court would necessarily, in effect, vacate the order made by the circuit court on December 20, 1912, removing said child from the custody of John Issenhuth and surrendering her to the Children's Home.

The questions involving the validity of said order made by the circuit court or the question as to whether or not the evidence justified the making of said order, is not subject to review by appellant, as judge of the county court.

The noncurrent progress of proceedings in the county court and in the circuit court involving the custody of this child, would be sure to raise a conflict of jurisdiction which would not only cause confusion, but might entirely defeat justice between the parties interested, and also jeopardize the interests of the child.

While chapter 28, Political Code of 1903, vests jurisdiction of such a proceeding in both the circuit and the county court, yet where two courts have concurrent jurisdiction of the subject matter to a proceeding, the court first assuming jurisdiction retains it to the exclusion of the other court or courts, until the final determination thereof.

The law construed in the McFall Case was amended by chapter 71, Laws of 1901, which is now embodied in the Political Code of 1903, as chapter 28 thereof, which amendment apparently makes the McFall case inapplicable.   Section 3207, Political Code of 1903.

Under the provisions of this section application for return of this child should have been made in the first instance to the Children's Home Society.

The rule contended for by appellant does not involve a matter of jurisdiction, but at most only states a rule of procedure which is subject to several exceptions.   The reason for the rule, however, is that in ordinary cases it is but fair that the question of jurisdiction be presented to the court which has assumed jurisdiction, in order that it may have an opportunity to correct its own errors.   Havemeyer v. Superior Court, 84 Cal. 327, 10 L. R. A. 627; State ex rel. McCaffery v. Aloe, (Mo.) 47 L. R. A.

392; State ex rel. McVentee et al. v. Bright et al., 224 Mo. 514, 123 S. W. 1057, 20 Ann. Cas. 955.

Thus in the case at bar, the Honorable C. A. Kelley, one of the appellants, and county judge of Beadle county, South Dakota, joined in the return to alternative writ of prohibition and vigorously defended the right of his court to retain jurisdiction in the matter complained of. Not only does he defend the jurisdiction of his court, but he seems in advance of any hearing to have fully determined as to the merits of all questions presented by the petition filed in his court. Not only this, but the county judge appears, also without any hearing, to assume to pass upon the merits of the order made by the learned circuit court on December 20, 1912, committing Celeste Issenhuth to the custody of the Children's Home Society, and to base this conclusion upon the verdict of a jury in a criminal action in which John Issenhuth was defendant.

It is evident from article 5, section 20, and article 5, section 14, Const., that the county court is a court of limited jurisdiction, while the circuit court is a court of general jurisdiction, and that the jurisdiction of the circuit court is in no way limited by that provision conferring jurisdiction upon the county court in certain matters. In re Creighton, (Neb.) 11 N. W. 313; People ex rel. Porteous v. Barton, (Colo.) 26 Pac. 140.

GATES, J. This is an appeal from a peremptory writ of prohibition issued by the circuit court of Beadle county, S. D., to the judge of the county court of said county and the sheriff of said county. A child, now known as Celeste Issenhuth, was born August, 1901, in Cleveland, Ohio. When six years old she was taken from her mother, Kate McGaugh, by the order of some court in Cleveland and placed in the St. Joseph's Home for Children. In the month of August, 1909, the said child was adopted by John Issenhuth and wife, by proceedings had in the county court of Spink county, S. D. In August, 1912, a proceeding entitled "State of South Dakota ex rel. Frank C. Kronschnabel, Plaintiff, v. John Issenhuth and Celeste Issenhuth, Defendants," was begun in the circuit court of Beadle county, S. D. It is claimed by the parties that this proceeding was had under chapter 28, Pol. Code. For anything that appears in the record it may have been brought under article 8, chap. 13, Probate Code.

In this proceeding the trial court had granted a continuance over the October, 1912, term in order that the proceeding might be tried by jury. This court in mandamus proceedings decided (State ex rel., etc., v. Taylor, 30 S. D. 304, 138 N. W. 372) that Issenhuth, the defendant in the former proceedings, was not entitled to a trial by jury and required the circuit court to proceed with the case. In such proceeding in this court, C. A. Kelley, the defendant herein, and now county judge of Beadle county, was one of the attorneys who, while nominally representing the trial judge, in reality represented Issenhuth, the defendant in the proceeding out of which the mandamus proceedings grew. Upon the trial of the proceeding against Issenhuth by the circuit court, an order dated December 20, 1912, was made, removing said child from the custody and control of her foster parent and surrendering her to the South Dakota Children's Home Society. Said order further provided that, until the child should be received by said society, she should remain in the custody of Mrs. Huntley in the city of Huron, Beadle county, S. D. The child remained in such custody until February 12, 1913. On that date an application was filed in the county court of Beadle county, S. D., by John Issenhuth, for the return of the said child to him, and on that date an order was issued by said county court requiring said Children's Home Society to show cause why said child should not be returned to said applicant and directing the sheriff of said county to take immediate possession of said child. This order was served upon the agent of said society in charge of said child at Huron on that date as he and said child were about to take the train for said Children's Home. On the next day an application was filed in said county court of Beadle county by Kate McGaugh, the mother of said child, asking for the return of said child to her. Thereupon said county court issued a similar order to show cause which was likewise served. Thereupon said application by John Issenhuth was withdrawn and dismissed. Pending the hearing on said second order to show cause, the circuit court of Beadle county on February 17, 1913, issued an alternative writ of prohibition to the judge of said county court, which writ was made permanent by the said circuit court on February, 20, 1913. It is from this permanent or peremptory writ that this appeal is taken. The concluding portion of said per-

emptory writ is as follows: "Now therefore it is ordered that the said C. A. Kelley, as judge of the county court of Beadle county, S. D., aforesaid, be and he hereby is absolutely restrained and enjoined from continuing the said proceedings in said court or taking any further action therein except it be to dismiss the same, and it is also ordered that the said A. J. Larson, sheriff of Beadle county, S. D., now holding the custody of the child, Celeste Issenhuth, under and by virtue of certain orders made by this said county court in the above-mentioned proceeding, forthwith surrender and deliver the said child, Celeste Issenhuth, to the South Dakota Children's Home Society, the relator herein, to have and to do with said child according to law and in accordance with the order of this court heretofore made and entered herein on the 20th day of December, 1912, in the proceeding entitled in this court in the name of the 'State of South Dakota ex rel. Frank C. Kronschnabel, Plaintiff, v. John Issenhuth and Celeste Issenhuth, Defendants'; and herein let the said defendants, and each of them fail not."

·[1] It is contended by appellants that the writ of prohibition did not lie: First, because relator did not make application for relief to the county court; second, because the county court had not rendered any decision in the matter before it; third, because relator had an adequate remedy at law; fourth, because the proceeding in the county court was a proceeding in guardianship, and therefore the county court had jurisdiction to hear and determine the application; fifth, that the part of section 3205, Pol. Code, which gives authority to the circuit court violates the Constitution in that it infringes upon the jurisdiction of county courts; sixth, because the provisions in section 3206 and 3207 of the Political Code, which lodge in the board of managers of the Children's Home Society the power of passing on applications for the return of children from the home, violate the Constitution in that they purport to take away from the courts the power vested in them.

We are of the opinion that the first three grounds of contention must be decided adversely to appellants. These questions relate to practice, not to jurisdiction. They are matters that might be properly urged in the trial court. That court in its discretion held adversely to those contentions. We see no reason

for holding that there was an abuse of such discretion; on the contrary, we are convinced that there was no such abuse. We are inclined to follow the rule laid down by the California Supreme Court in the case of Havemeyer v. Superior Court, 84 Cal. 327, 24 Pac. 121, 10 L. R. A. 627, 18 Am. St. Rep. 192: "Without going into the niceties of the subject, it may be said that the following propositions, applicable to this case, are fully supported by the decision in that case:—(1) If a want of jurisdiction is apparent on the face of the proceeding in the lower court, no plea or preliminary objection is necessary before suing out the writ of prohibition. (2) If the proceeding in the lower court is not on its face without the jurisdiction of such court, but is so in fact by reason of the existence of some matter not disclosed, such matter ought to be averred in some proper form, in order to make the want of jurisdiction appear. (3) But this is not essential to the jurisdiction of the superior court to grant prohibition. It is only laches, which may or may not be excused, according to circumstances. Accordingly, we find that frequently a failure to plead in the lower court was excused for the reason that it appeared that the plea would have been rejected if made. The whole question, in fact, was one of practice merely, not of jurisdiction; and the objection which most frequently prevailed to the granting of the writ was, not that the application came too early, but that it came too late." In the present case, the application to the county court showed that the circuit court had previously entertained jurisdiction of the matter. Moreover, the judge of the county court joined in the return made to the alternative writ and thereby asserted his right to proceed with the case. In State ex rel. McEntee v. Bright, 224 Mo. 514, 123 S. W. 1057, 135 Am. St. Rep. 552, 20 Ann. Cas. 955, the court used these words peculiarly applicable to the facts in this case as such facts appear from the return made by the judge of the county court. "Neither do counsel * * * in this case make any suggestion that the court * * * would not have held on with a death grip to jurisdiction of the cause pending before that court. On the contrary, the judge of that court joins in the return made * * * affirming his right to proceed with the case. Thus by the return it is shown that a challenge to the jurisdiction would have been unavailing." See, also, State ex

rel. McCaffery v. Aloe, 152 Mo. 466, 54 S. W. 494, 47 L. R. A. 393; Board of Education v. Holt, 51 W. Va. 435, 41 S. E. 337; Bice v. Boothville Tel. Co., 62 W. Va. 521, 59 S. E. 501, 125 Am. St. Rep. 986, 13 Ann. Cas. 1046.

This contention that the writ should not have issued until an application for relief had been made to the county court amply justifies this court in reviewing the extraordinary situation presented by such return. It justifies calling attention to the relation which the judge of the county court had borne to the previous legal proceedings out of which the one then before it seems to have grown. It justifies reference to a matter certainly novel in a court's return to a writ—we refer to the findings of fact contained in such return, being in effect findings of fact in a matter instituted in such court, which findings were rendered prior to the time when any issue of fact had been raised, and which findings amount to a prejudgment on the merits of the cause before it. The petition of Kate McGaugh, upon which she asked for the return of the child to her, admitted her unfitness to have the custody of such child at the time it was taken from her by the Ohio court; alleged the adoption of the child by Issenhuth; also set forth in detail facts showing changed conditions rendering her, as she claimed, a fit and proper person to have the custody and care of such child. The petition recited the proceedings in the circuit court wherein the said child had been taken from its foster parent and committed to the care of the Children's Home and alleged that it was about to be taken to such home; that after such child had been taken from Issenhuth, in a criminal action against Issenhuth, he had been found not guilty of the offense toward such child, for which offense petitioner claimed said child had been taken from Issenhuth by said circuit court. Said petition closed by claiming a right, by law, to ask for the return of such child to her and prayed the county court to direct such child to be returned to her. The petition of John Issenhuth was in similar form, except that it contained matter tending to show his fitness to have the custody of the child and omitting those matters peculiar to the claim of Kate McGaugh. The return of the defendants to the alternative writ of prohibition recited, in substance, the petition of Kate McGaugh and amounted to a finding that all the facts set forth in said petition were true. Said re-

turn also contained findings that the conditions existing when the circuit court transferred the custody of the child from its foster parent to the Children's Home Society were entirely changed; that the relations existing at the time of the petition in the circuit court had "been entirely abrogated and nullified and the grounds upon which such petition was made no longer exist"; that the same evidence was submitted in the two proceedings (the one civil and the other criminal) in said circuit court; and that a jury, in the criminal cause, had found as a fact that the charges made and testified to upon which the said Hon. Alva E. Taylor made said order (in the civil proceedings) were not true in fact; that such jury had found Issenhuth innocent of the offense of which Judge Taylor had assumed him guilty when making the order depriving him of the custody of the child and placing her in such home; that there was additional evidence submitted in the criminal case not offered in the said civil proceeding, said evidence relating to lack of childish innocence on the part of the child, and to animosity and hatred of the complaining witness (who was also petitioner in the civil proceeding) against said Issenhuth.

The query naturally arises: How did the judge of the county court judicially ascertain the truthfulness of the facts set forth in Kate McGaugh's petition, and in what manner were the additional facts found by him brought to his judicial attention in the proceeding brought in his court? The petition presented to the the circuit court upon which such court made its order removing the child in question from the custody of its foster parent and committing it to the custody of the Children's Home Society was before this court in the mandamus proceedings brought in this court and hereinbefore referred to. From such petition it appears that such foster parent was charged with many other acts of improper conduct toward such child besides that act of which he was acquitted in the criminal proceeding. How was the judge of the county court able to find that the circuit court assumed said foster parent guilty of the offense for which he was tried in the criminal action? How did he know that such circuit court did not find the foster parent guilty of the other misconduct charged against him, and did not *assume* him innocent of the charge of which the jury acquitted him? How can the judge of the county court say that, if the issue of such foster parent's guilt of this

very charge had been submitted to him in the proceeding instituted in his court, he would not find—and, in justice, be bound to find from the fair preponderance of the evidence, if not beyond a reasonable doubt—that he was guilty thereof? It is perfectly clear to us that it would have been useless for the Children's Home Society to have sought its rights before a court that had, without notice to, or any chance for a hearing by, such society, prejudged the alleged merits of the cause before it.

[2-4] We will next consider the remaining assignments together. Appellants further urge that the proceeding by which a child is committed to the Children's Home is one substantially in the nature of a guardianship proceeding. With this we fully agree. It is their contention that the county court in no manner interfered with the action of the circuit court for the reason, as urged in their brief, that the circuit court had made its order appointing the guardian, which order had gone into full force and effect, and the child had been placed in the care of such guardian, to-wit, the Children's Home Society, and that therefore the situation was the same legally as though such child had been in the Children's Home for some time previous thereto. It is their further contention that the county court is given jurisdiction to terminate a guardianship relation when the conditions are such as to justify such termination, claiming that this power is given by an express provision of the statute. It will be noted that this provision, section 157, Civ. Code, is in connection with other provisions relating to power over and control of guardians. Section 148, Civ. Code, gives to the court appointing exclusive jurisdiction to control. Section 159 uses the word "suspended" where clearly is meant "terminated," and this statute shows clearly that "the court" mentioned therein must be the same court as "a court" mentioned therein. Furthermore, we apprehend that the right of the court to terminate a guardianship relation would be an inherent right vested in the court creating it, owing to the nature of this relation, and that no statute is needed to confer the authority to terminate the relation. Be that as it may, it seems clear that what the statute contemplates is that the court *which appointed the guardion may*, under proper circumstances, terminate such guardianship relation. It seems inconceivable that it *was intended to give to one court the right to rescind or revoke*

the order of another court.  If this can be done, then we have a situation wherein, if the county court of one county should appoint a guardian, upon the next day the county court of another county could revoke the order of the first court and appoint another, and then the first or some other court could the next day, set aside the proceeding of the second court; and so on without end.  As we understand the guardianship proceeding, it is one which is continuing in its nature, and when the jurisdiction legally vested in any court is exercised and such court reaches out and brings under such jurisdiction and into its control the proper parties, such parties remain under its control and subject to its direction until the guardianship ends, and that there is no power in any other court to supervise or interfere with the proper exercise of such jurisdiction except upon appeal properly taken.  We are frank to say that those sections of chapter 28, Pol. Code, which seem to give to the Children's Home Society plenary powers over children committed to it—thus apparently terminating the jurisdiction of the court and giving it no control over such guardian or power to protect the interests of the child—seem inconsistent with and in derogation of the power which should remain vested in the court.  But even if these sections are unconstitutional, it only strengthens what we have said above and leads to this result:  That, if the order appointing the Children's Home Society as guardian of Celeste Issenhuth was valid, then such order appointing the guardian stands unchallenged and could only be terminated by a proper application made in the court that granted the order.  It would therefore follow that, if the order of the circuit court committing the child was valid, the application made to the county court failed to reveal facts sufficient to call into exercise any jurisdiction to remove a guardian, because such application revealed the fact that such guardian had been appointed by a court other than the one to which the application was addressed.  The application conferred no jurisdiction upon the county court; the statute gave the county court no jurisdiction; the record therefore shows ample grounds upon which a writ of prohibition might have issued; and, even if the grounds stated in the alternative and peremptory writs were not in themselves sufficient, yet, in analogy to well-established rules recognized upon appeals in ordinary cases, this court will not disturb or re-

verse the rightful judgment of the trial court, though such judgment may have been by such trial court based upon insufficient grounds.

[5] For the sake of the argument, let us concede that the county court of Beadle county is given jurisdiction to remove guardians appointed by some other court, and that therefore it could remove this guardian even though its appointment were valid. In what manner shall this proceeding for removal be instituted, and who are to be made parties thereto? The proceeding instituted by Issenhuth was dismissed. Kate McGaugh had ceased to have any rights as parent, having lost same upon the adoption of the child by Issenhuth, who still remains the father of this child regardless of the fact of its being placed in the Children's Home, and will remain such father until the death of the child or its legal adoption by some other person. It follows that Kate McGaugh could not invoke the jurisdiction of the county court under any right given the parent by chapter 28, Pol. Code.

[6] Again, let us suppose that the circuit court was without jurisdiction to take the child and commit it to the care of the Children's Home. Then when the county court assumed jurisdiction over this child the situation was exactly as though there had been no proceeding in the circuit court whatsoever and this child stood as the legally adopted child of John Issenhuth with full right and power upon his part to the custody and control of same. We know of no statute giving any right, other than by proceedings based upon a charge that the parent, Issenhuth, was a person unfit to have its care, to have the child taken from Issenhuth and given into the custody of some other party. And furthermore, as above noted, the application of Kate McGaugh, showing that she was not the legal parent of such child—thus showing that she had no greater legal rights than any stranger to the child, and also setting forth allegations which would show that Issenhuth was a proper person to have the care of such child—wholly failed to present any matter sufficient to call into exercise any jurisdiction given the county court.

The fact is that the county court assumed jurisdiction under the theory that the child had been legally committed to the guardianship of the home, and that it had the power to terminate

such guardianship. This is the only theory upon which it can base any claim to jurisdiction. The judgment order should be sustained, not merely because the county court and sheriff were wrongfully interfering with the orderly enforcement of the orders of the circuit court, but upon the broad proposition that, entirely regardless of the former proceedings in the circuit court, and, even if there had been no previous proceedings in such court, the proceedings brought in the county court were entirely without authority of law and attempted to invoke an unauthorized exercise of jurisdiction, and, in acting therein, the county court acted without any jurisdiction.

[7] We decline to pass upon the question whether that part of section 3205, Pol. Code, which gives authority to the circuit court in the first instance, infringes upon the jurisdiction of county courts, and we also decline to pass upon the question as to whether chapter 298 of the Laws of 1909 took away such jurisdiction from the circuit court. Neither question is necessary to a determination of this case. These questions cannot be raised by an attempted appeal from the circuit court to the county court.

The peremptory writ of prohibition is affirmed.